1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RAYMOND J. TAFOYA,

11              Plaintiff,                    No. CIV S-06-0634 RRB GGH P

12        vs.

13   ROSEANNE CAMPBELL, et al.,               ORDER &

14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16   Introduction

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C.

18   § 1983.  Pending before the court is defendant Roseanne Campbell's motion to dismiss, filed on

19   November 22, 2006, to which plaintiff filed his opposition on January 23, 2007,[1] having been

20   granted an extension of time to do so.[2]  Defendant Campbell filed a reply on January 31, 2007.

21   On May 16, 2007, defendant J. Haviland filed a motion for joinder in defendant Campbell's

22   motion to dismiss, to which plaintiff filed his opposition on June 5, 2007.

23   \\\\\

24   _____

25          [1] Per the mailbox rule (Houston v. Lack, 487 U.S. 266, 275-76, 108 S.Ct. 2379, 2385 (1988)), the opposition was filed on January 20, 2007.

26          [2] See Order, filed on December 20, 2006.

1

Complaint

Plaintiff is proceeding on a complaint, filed on March 27, 2006, in which he names Roseanne Campbell, Warden of Mule Creek State Prison (MCSP), and J. Haviland, Correctional Counselor I (CCI) at San Quentin State Prison (SQSP), as defendants. Plaintiff alleges that defendant Haviland, at the SQSP reception center, wrote and inserted "false documentation" about plaintiff in his prison C-file. Defendant Haviland placed "adverse and damaging" information, accusations about plaintiff's court case. This false information has a negative impact as regards his freedom in the future because it affects the decision of the Board of Parole Hearings (BPH) with respect to obtaining a parole date. Plaintiff avers that he never discussed his case with defendant Haviland; but there was a conflict of interest and he and defendant Haviland did not get along. Plaintiff seeks only prospective injunctive relief in the form of removal, or expungement, of the alleged false and damaging information from his C-file. Complaint, pp. 1-3.

Motion to Dismiss

Defendant Campbell moves for dismissal on the grounds that: 1) plaintiff has failed to exhaust his administrative remedies; and 2) defendant Campbell cannot be held liable on a theory of vicarious liability. Motion to Dismiss (MTD), pp. 3-7.

*Failure to Exhaust - Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

In a motion to dismiss for failure to exhaust administrative remedies under non-enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The parties may go outside the pleadings, submitting affidavits or declarations under penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a record. Wyatt v. Terhune, 315 F.3d at 1120 n.14. The court provided plaintiff with such fair notice by Order, filed on August 10, 2006.

\\\\\

2

1    Should defendant submit declarations and/or other documentation demonstrating

2  an absence of exhaustion, making a prima facie showing, plaintiff has a burden of production to

3  refute that showing, although plaintiff may rely upon statements made under the penalty of

4  perjury in the complaint if the complaint shows that plaintiff has personal knowledge of the

5  matters stated and plaintiff calls to the court's attention those parts of the complaint upon which

6  plaintiff relies.  If the court determines that plaintiff has failed to exhaust, dismissal without

7  prejudice is the appropriate remedy for non-exhaustion of administrative remedies.  Wyatt v.

8  Terhune, 315 F.3d at 1120.

9    *PLRA Requirements*

10    The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

11  "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

12  other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

13  such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

14  must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).   In

15  Booth v. Churner, 532 U.S. 731,121 S. Ct. 1819 (2001), the Supreme Court held that inmates

16  must exhaust administrative remedies, regardless of the relief offered through administrative

17  procedures.  532 U.S. at 741, 121 S. Ct. at 1825.  Therefore, inmates seeking money damages

18  must also completely exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731,

19  121 S. Ct. 1819 (inmates seeking money damages are required to exhaust administrative

20  remedies even where the grievance process does not permit awards of money damages).  42

21  U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until*

22  such administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198,

23  1199 (9th Cir. 2002) ("a prisoner does not comply" with the requirement of § 1997(e)(a) "by

24  exhausting available remedies during the course of the litigation").

25  \\\\\

26  \\\\\

3

1  *Administrative Exhaustion Procedure*

2          In order for California prisoners to exhaust administrative remedies, they must

3  proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

4  CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

5  third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

6  985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final

7  decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

8  The United States Supreme Court has, in the context of the applicable PLRA § 1997e(a)

9  exhaustion requirement, resolved any question as to whether a procedural default may be found,

10  should a prisoner plaintiff fail to comply with the procedural rules of a prison's grievance system,

11  holding that the PLRA exhaustion requirement can only be satisfied by "proper exhaustion of

12  administrative remedies....," which means that a prisoner cannot satisfy the requirement "by

13  filing an untimely or otherwise procedurally defective administrative grievance or appeal."

14  Woodford v. Ngo, ___ U.S. ___,126 S. Ct. 2378, 2382 (June 22, 2006).

15          *Discussion*

16          Defendant argues that while plaintiff indicated that he had exhausted his

17  administrative remedies on his complaint form (p. 2), plaintiff failed to submit his appeal through

18  all three formal levels of review.  MTD, pp. 2, 5.  Defendant submits a declaration from N.

19  Grannis, Chief of the Inmate Appeals Branch (IAB) in Sacramento (Grannis Dec.), which branch

20  receives and reviews third or Director's level appeals.  Grannis Dec., ¶¶ 1, 7.  Grannis' review of

21  IAB records revealed, she declares, that plaintiff received only one third level decision between

22  August 1997 and March 27, 2006, in appeal log no. 03-01558, an appeal concerning plaintiff's

23  claim of staff having lost his athletic shoes when he was transferred to ASU.  MTD, p. 2, Grannis

24  Dec., ¶ 11.  In her declaration, Grannis declares that attached to her declaration is a "true and

25  correct copy of Grievance no. 03-01558," as Exhibit A, and, as Exhibit B, is a copy of a February

26  10, 2006 grievance form from plaintiff that was screened out because plaintiff had failed to

4

1    submit his grievance first to the first and second levels of review.  Grannis Dec., ¶ 11.  However,

2    no such exhibits are attached, at least not with the declaration that has been filed into the court's

3    electronic docket of this case.   Nor can the court locate these exhibits in any other filed portion

4    of defendant Campbell's motion to dismiss.  Defendant's filing is therefore deficient; however,

5    because plaintiff does not dispute the representation made by Grannis, appears to have been

6    served by defendant with the attachments missing before this court, and because plaintiff,

7    himself, has supplied supporting documentation for the grievances at issue, the court will not find

8    that defendant has failed thereby to meet her burden.

9            In opposition, plaintiff avers that he has been diligent in his efforts to resolve the

10   matter at issue in good faith.  Opposition (Opp.), p. 1.  He states that he filed two institutional

11   level inmate appeals, and, apparently, one appeal to the BPH and one to the Chief of Inmate

12   Appeals.  Id.  Plaintiff wishes to have his complaint dismissed with leave to amend, contending

13   that he can establish that the evaluation or report written by defendant Haviland was "a key

14   reason" for his having been denied parole on October 12, 2005.  Opp., p. 2; Opp. Memorandum

15   (Mem.), p. 2[3].  He states that he was prejudiced by defendant Haviland's report when Haviland

16   made a false or erroneous statement at the time of plaintiff's initial CDCR commitment at the

17   SQSP reception center in 1992, without notifying plaintiff in writing or providing him with a

18   copy; thus plaintiff had no knowledge of the mis-information until his life parole hearing.  Id.;

19   Opp. Mem., p. 1.

20           Plaintiff, somewhat confusingly, in light of his earlier representation, states that he

21   made three efforts to resolve this matter through the administrative grievance process.  Opp.

22   Mem., p. 2.  Apparently, plaintiff first became aware of the alleged error or falsehood in his

23   prison file concerning his criminal conviction on the date of his parole denial, October 12, 2005;

24

25           [3]  The information concerning plaintiff's commitment offense that defendant Haviland
      entered that is at issue appears to be the following statement: "He [plaintiff herein] related that
      the victim and he had a long standing hatred for each other and he knew that it was him that shot

26   at the van."  Opp., Exh. E.

1   thereafter, since the claimed erroneous information was entered by defendant Haviland in 1992 at

2   San Quentin, plaintiff states that he made two attempts with the MCSP appeals coordinator to

3   address the issue.  Opp. Mem., p. 2.  These appeals were not processed but were screened out;

4   afterward, plaintiff submitted his appeal to the Chief of Inmate Appeals whereupon, plaintiff

5   states, the appeal was once again "screened out," albeit "erroneously."  Id.  Plaintiff complains

6   that his appeals were screened out without his being interviewed or any investigation conducted.

7   Id.  Plaintiff avers he made his three efforts to exhaust administratively in good faith and that the

8   first two grievances were rejected because of "time lapse," while the third rejection directed him

9   to return to the earlier levels that had screened his grievance out because they had been submitted

10  beyond the deadline for timely filing.

11          In his declaration, plaintiff states that on or about January 19, 2006, he submitted

12  a CDC 602 inmate appeal, after which he received, on or about January 30, 2006, an informal

13  screening notice, stating that "[t]here has been too great a TIME LAPSE between when the

14  action or decision occurred and when you filed your appeal with no explanation of why you did

15  not or could not file in a timely fashion.  Time limits expired per CCR 3084.6(c)."  Plaintiff's

16  Dec., ¶¶ 1-3, Exhs. A & B.  Upon receipt of the rejected appeal, plaintiff resubmitted it to the

17  MCSP appeals coordinator, who returned it again for the same reason on February 3, 2006.  Id., ¶

18  4, Exh. C.  On or about February 5, 2006, plaintiff submitted his appeal to the third level of

19  review, which was returned sometime in late April, 2006, dated April 22, 2006, with a notice

20  indicating that plaintiff's form had to be completed through the second level of review, and

21  noting the appeal had been "rejected, withdrawn or cancelled."  Id., ¶ 5, Exh. D.  Plaintiff

22  maintains that no administrative remedy was available to him, and that absent the opportunity to

23  have the erroneous information removed he will continue to be prejudiced at any future parole

24  hearing.  Opp. Mem., p. 3.

25          In reply, defendant contends that, in order to be timely, plaintiff should have filed

26  his grievance by November 2, 2005, fifteen days after he had first learned, at the October 12,

1   2005 parole hearing, of the false information entered into his file in 1992, citing <u>Woodford v.</u>

2   <u>Ngo</u>, <u>supra</u>, 126 S. Ct. at 2385-86, for the principle that proper, e.g., timely, exhaustion of

3   administrative remedies is mandatory.  Reply, p. 3.  As defendants note, plaintiff himself avers

4   that he initiated his first 602 appeal on or about January 19, 2006.  Id.; <u>see also</u>, plaintiff's Dec.,

5   in Opp., ¶ 2 & Exh. A.

6           Plaintiff, while he recounts his repeated but failed efforts to exhaust his claim

7   administratively and avers that defendant Campbell has received numerous complaints that

8   inmate appeals have been screened out improperly (Opp., p. 4), does not make clear why he did

9   not initiate his grievance within the fifteen-day time limit set forth in the prison regulations.[4]  The

10  United States Supreme Court, as noted earlier, has left no room for doubt that compliance with a

11  prison's grievance procedure deadlines is required  for proper exhaustion under the PLRA.

12  <u>Woodford v. Ngo</u>, 126 S. Ct. at 2386-87.

13          As the court has found that this action should be dismissed for failure to exhaust

14  administrative remedies, the undersigned will not reach defendant Campbell's further ground for

15  dismissal.  The court observes that defendant Campbell has not stated as a ground for dismissal

16  that this action should not proceed as an action under 42 U.S.C. § 1983 on the basis of the relief

17  sought:

18          Challenges to the validity of any confinement or to particulars
            affecting its duration are the province of habeas corpus, <u>Preiser v.</u>
19          <u>Rodriguez</u>, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439
            (1973); requests for relief turning on circumstances of confinement
20          may be presented in a § 1983 action.

21  <u>Muhammad v. Close</u>, 540 U.S.749, 750, 124 S.Ct. 1303, 1304 (2004) (per curiam).  Given the

22  relief he seeks, expungement of alleged false or erroneous information from his prison record,

23  which may have already and might in future affect his chances for parole, plaintiff might more

24

25          [4] "An appellant must submit the appeal within 15 working days of the event or decision
    being appealed, or of receiving an unacceptable lower level appeal decision."  Cal. Code Regs.
26  tit.xv, § 3084.6(c), in relevant part.

                                                    7

1  appropriately pursue his remedy by way of a petition for writ of habeas corpus.  See, Bostic v.

2  Carlson, 884 F.2d 1267, 1269 (1989) (habeas corpus jurisdiction allows a petitioner to seek

3  expungement from his prison record of adverse information, such as a disciplinary finding, if

4  such "is likely to accelerate the prisoner's eligibility for parole").  Although this court must

5  recommend dismissal of this civil rights action, it does so without prejudice to plaintiff's filing,

6  as a petitioner, a habeas petition.[5]

7  Motion to Join

8        Defendant Haviland has brought a motion to join in defendant Campbell's

9  motion.  In his opposition to the motion, plaintiff avers that the only ground applicable to

10 defendant Haviland is the failure to exhaust contention.  Opp., pp. 1-2.  However, because this

11 court must, pursuant to Woodford v. Ngo, supra, recommend dismissal of this action for failure

12 to exhaust administrative remedies, this concession renders his opposition futile, notwithstanding

13 his efforts to implicate the grievance process.  Opp., pp. 3-5.  Defendant Haviland's motion to

14 join in the motion to dismiss will be granted.

15        Accordingly, IT IS ORDERED that defendant Haviland's May 16, 2007, motion

16 to join defendant Campbell's motion to dismiss is granted.

17        IT IS RECOMMENDED that defendant Campbell's motion to

18 dismiss, filed on November 22, 2006, in which defendant Haviland joins, be granted for

19 plaintiff's failure to exhaust administrative remedies, and this case be closed.

20        These findings and recommendations are submitted to the United States District

21 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

22 days after being served with these findings and recommendations, any party may file written

23 objections with the court and serve a copy on all parties.  Such a document should be captioned

24

25        [5] Plaintiff is cautioned, however, that the exhaustion requirements for the filing of a
   federal habeas petition, under 28 U.S.C. § 2254, differ markedly from those to proceed under 42
   U.S.C. § 1983, i.e., the exhaustion of *state court remedies* is a prerequisite to the granting of a
26 petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).

8

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2  shall be served and filed within ten days after service of the objections.  The parties are advised

3  that failure to file objections within the specified time may waive the right to appeal the District

4  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  DATED: 8/3/07

/s/ Gregory G. Hollows

6

7  GGH:009                                GREGORY G. HOLLOWS
                                          UNITED STATES MAGISTRATE JUDGE
8  tafo0634.mtd

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26